IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF NORTH CAROLINA

|  |  |  |
|---|---|---|
| DAVID H. CORDER, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | 1:14CV768 |
| | ) | |
| CAROLYN W. COLVIN, | ) | |
| Acting Commissioner of Social Security, | ) | |
| | ) | |
| Defendant. | ) | |

MEMORANDUM OPINION AND RECOMMENDATION
OF UNITED STATES MAGISTRATE JUDGE

Plaintiff David H. Corder ("Plaintiff") brought this action pursuant to Sections 205(g) and 1631(c)(3) of the Social Security Act (the "Act"), as amended (42 U.S.C. §§ 405(g) and 1383(c)(3)), to obtain judicial review of a final decision of the Commissioner of Social Security denying his claims for Disability Insurance Benefits and Supplemental Security Income under, respectively, Titles II and XVI of the Act. The parties have filed cross-motions for judgment, and the administrative record has been certified to the Court for review.

I.  PROCEDURAL HISTORY

Plaintiff filed his applications for Disability Insurance Benefits and Supplemental Security Income Benefits on March 1, 2011, alleging a disability onset date of July 19, 2010. (Tr. at 229-44.) [1] His applications were denied initially (Tr. at 138-59) and upon

---

[1] Transcript citations refer to the Sealed Administrative Record [Doc. #7].

reconsideration (Tr. at 160-83). Thereafter, Plaintiff requested an administrative hearing de novo before an Administrative Law Judge ("ALJ"). (Tr. at 216-17.) Plaintiff attended the subsequent video hearing on May 31, 2013. "Although informed of the right to representation, the claimant chose to appear and testify without the assistance of an attorney or other representative." (Tr. at 15.)

The ALJ ultimately concluded that Plaintiff was not disabled within the meaning of the Act. (Tr. at 35). On August 21, 2014, the Appeals Council denied Plaintiff's request for review of the decision, thereby making the ALJ's conclusion the Commissioner's final decision for purposes of judicial review (Tr. at 1-5).

II. LEGAL STANDARD

Federal law "authorizes judicial review of the Social Security Commissioner's denial of social security benefits." Hines v. Barnhart, 453 F.3d 559, 561 (4th Cir. 2006). However, "the scope of . . . review of [such an administrative] decision . . . is extremely limited." Frady v. Harris, 646 F.2d 143, 144 (4th Cir. 1981). "The courts are not to try the case de novo." Oppenheim v. Finch, 495 F.2d 396, 397 (4th Cir. 1974). Instead, "a reviewing court must uphold the factual findings of the ALJ [underlying the denial of benefits] if they are supported by substantial evidence and were reached through application of the correct legal standard." Hancock v. Astrue, 667 F.3d 470, 472 (4th Cir. 2012) (internal brackets omitted).

"Substantial evidence means 'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" Hunter v. Sullivan, 993 F.2d 31, 34 (4th Cir. 1993) (quoting Richardson v. Perales, 402 U.S. 389, 390 (1971)). "It consists of more than a mere scintilla of evidence but may be somewhat less than a preponderance." Mastro v.

2

Apfel, 270 F.3d 171, 176 (4th Cir. 2001) (internal citations and quotation marks omitted). "If there is evidence to justify a refusal to direct a verdict were the case before a jury, then there is substantial evidence." Hunter, 993 F.2d at 34 (internal quotation marks omitted).

"In reviewing for substantial evidence, the court should not undertake to re-weigh conflicting evidence, make credibility determinations, or substitute its judgment for that of the [ALJ]." Mastro, 270 F.3d at 176 (internal brackets and quotation marks omitted). "Where conflicting evidence allows reasonable minds to differ as to whether a claimant is disabled, the responsibility for that decision falls on the ALJ." Hancock, 667 F.3d at 472 (internal brackets omitted). "The issue before [the reviewing court], therefore, is not whether [the claimant] is disabled, but whether the ALJ's finding that [the claimant] is not disabled is supported by substantial evidence and was reached based upon a correct application of the relevant law." Craig v. Chater, 76 F.3d 585, 589 (4th Cir. 1996).

In undertaking this limited review, the Court notes that in administrative proceedings, "[a] claimant for disability benefits bears the burden of proving a disability." Hall v. Harris, 658 F.2d 260, 264 (4th Cir. 1981). In this context, "disability" means the "'inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months.'" Id. (quoting 42 U.S.C. § 423(d)(1)(A)).[2]

---

[2] "The Social Security Act comprises two disability benefits programs. The Social Security Disability Insurance Program . . . provides benefits to disabled persons who have contributed to the program while employed. The Supplemental Security Income Program . . . provides benefits to indigent disabled persons. The statutory definitions and the regulations . . . for determining disability governing these two programs are, in all aspects relevant here, substantively identical." Craig, 76 F.3d at 589 n.1 (internal citations omitted).

"The Commissioner uses a five-step process to evaluate disability claims." Hancock, 667 F.3d at 472 (citing 20 C.F.R. §§ 404.1520(a)(4); 416.920(a)(4)). "Under this process, the Commissioner asks, in sequence, whether the claimant: (1) worked during the alleged period of disability; (2) had a severe impairment; (3) had an impairment that met or equaled the requirements of a listed impairment; (4) could return to her past relevant work; and (5) if not, could perform any other work in the national economy." Id.

A finding adverse to the claimant at any of several points in this five-step sequence forecloses a disability designation and ends the inquiry. For example, "[t]he first step determines whether the claimant is engaged in 'substantial gainful activity.' If the claimant is working, benefits are denied. The second step determines if the claimant is 'severely' disabled. If not, benefits are denied." Bennett v. Sullivan, 917 F.2d 157, 159 (4th Cir. 1990).

On the other hand, if a claimant carries his or her burden at each of the first two steps, and establishes at step three that the impairment "equals or exceeds in severity one or more of the impairments listed in Appendix I of the regulations," then "the claimant is disabled." Mastro, 270 F.3d at 177. Alternatively, if a claimant clears steps one and two, but falters at step three, i.e., "[i]f a claimant's impairment is not sufficiently severe to equal or exceed a listed impairment, the ALJ must assess the claimant's residual function[al] capacity ('RFC')." Id. at 179.³ Step four then requires the ALJ to assess whether, based on that

---

³ "RFC is a measurement of the most a claimant can do despite [the claimant's] limitations." Hines, 453 F.3d at 562 (noting that pursuant to the administrative regulations, the "RFC is an assessment of an individual's ability to do sustained work-related physical and mental activities in a work setting on a regular and continuing basis . . . [which] means 8 hours a day, for 5 days a week, or an equivalent work schedule" (internal emphasis and quotation marks omitted)). The RFC includes both a "physical exertional or strength limitation" that assesses the claimant's "ability to do sedentary, light, medium, heavy, or very heavy work," as well as "nonexertional limitations (mental, sensory, or skin impairments)." Hall, 658 F.2d at 265. "RFC is to be determined by the ALJ only after [the ALJ] considers all relevant evidence of a claimant's impairments and any related symptoms (e.g., pain)." Hines, 453 F.3d at 562-63.

4

RFC, the claimant can "perform past relevant work"; if so, the claimant does not qualify as disabled. Id. at 179-80. However, if the claimant establishes an inability to return to prior work, the analysis proceeds to the fifth step, which "requires the Commissioner to prove that a significant number of jobs exist which the claimant could perform, despite [the claimant's] impairments." Hines, 453 F.3d at 563. In making this determination, the ALJ must decide "whether the claimant is able to perform other work considering both [the claimant's RFC] and [the claimant's] vocational capabilities (age, education, and past work experience) to adjust to a new job." Hall, 658 F.2d at 264-65. If, at this step, the Government cannot carry its "evidentiary burden of proving that [the claimant] remains able to work other jobs available in the community," the claimant qualifies as disabled. Hines, 453 F.3d at 567.

III. DISCUSSION

In the present case, the ALJ found that Plaintiff had not engaged in "substantial gainful activity" since his amended alleged onset date. Plaintiff therefore met his burden at step one of the sequential evaluation process. At step two, the ALJ further determined that Plaintiff suffered from the following severe impairments: diabetes mellitus, coronary artery disease, hypertension, COPD, sleep apnea, and obesity. (Tr. at 17.) The ALJ found at step three that none of these impairments met or equaled a disability listing. (Tr. at 19.) Therefore, the ALJ assessed Plaintiff's RFC and determined that he could perform

> light work as defined in 20 CFR 404.1567(b) and 416.967(b) except the claimant could lift 20 pounds occasionally and 10 pounds frequently; the claimant could sit up to six hours out of an eight-hour workday; the claimant could stand up to two hours in addition to walking up to two hours out of an

eight-hour workday; the claimant could never climb ladders, ropes, and scaffolds, but he could occasionally climb ramps and stairs; the claimant could occasionally balance; the claimant could frequently stoop, kneel, crouch, and crawl. The claimant should avoid concentrated exposure to fumes and workplace hazards.

(Tr. at 20.) Based on this determination, the ALJ found under step four of the analysis that Plaintiff could not return to his past relevant work. However, based on the vocational expert's testimony, the ALJ determined at step five, that, given Plaintiff's age, education, work experience, and RFC, he could perform other jobs available in the national economy, including the representative occupations of Cashier II and Bench Assembler. (Tr. at 34-35.) Therefore, the ALJ concluded that Plaintiff was not disabled under the Act. (Tr. at 35.)

Plaintiff now challenges the ALJ's finding at step five. In particular, he argues that "[t]here is an apparent unresolved conflict between the [Dictionary of Occupational Titles ("DOT")], which indicates that the jobs [cited by the vocational expert] may require standing and walking for 6 hours per day, and the [vocational expert's] testimony that the DOT indicates that the jobs could be performed by a person limited to standing and walking 2 hours per day." (Pl.'s Br. [Doc. #10] at 7.) Plaintiff further contends that (1) "the ALJ failed to comply with [Social Security Ruling ("SSR")] 00-4p's requirement of eliciting a reasonable explanation for the conflict . . . before relying [on the expert's] testimony" and that (2) "[b]y so failing, the ALJ also failed to fulfill his heightened duty to assist a *pro se* claimant to fully develop the record." (Id.)

A plain reading of SSR 00-4p and the hearing transcript in the present case belies Plaintiff's allegations of error. Ruling 00-4p provides that the existence of "an apparent unresolved conflict" between a job's requirements as described in the DOT and as described

by a vocational expert triggers an ALJ's responsibility to "elicit a reasonable explanation for the conflict before relying on the [expert's testimony] to support a determination or decision about whether the claimant is disabled." SSR 00-4p, 2000 WL 1898704, at *2. Significantly, SSR 00-4p specifically includes a vocational expert's "experience in job placement or career counseling" among reasonable bases for relying on the evidence from such an expert rather than the DOT. Id. The Ruling goes on to explain, in pertinent part, that "[t]he DOT lists *maximum* requirements of occupations as generally performed, not the range of requirements of a particular job as it is performed in specific settings. A [vocational expert] or other reliable source of occupational information may be able to provide more specific information about jobs or occupations than the DOT." Id. at *3 (emphasis added). However, "[n]either the DOT nor the [vocational expert's] evidence automatically 'trumps' when there is a conflict." Id. at *2. Instead, "[t]he adjudicator must resolve the conflict by determining if the explanation given by the [vocational expert] is reasonable and provides a basis for relying on the [expert's] testimony rather than on the DOT information." Id.

In the present case, the ALJ expressly recognized the possibility of a conflict between the DOT and the vocational expert's testimony as to the standing and walking requirements of the jobs identified at step five of the sequential analysis. The ALJ's first hypothetical to the vocational expert described an individual with an RFC as described above, except that such an individual was capable of standing and walking for six hours in an eight-hour workday. (Tr. at 63.) When asked what work would be available to this hypothetical individual, the expert testified that he could perform the jobs of cashier II, cafeteria attendant, and bench assembler. (Tr. at 64.) The vocational expert confirmed that this

7

answer was consistent with the DOT. (Id.) The ALJ then asked as follows: "Hypothetical number two is the same as hypothetical number one. The only modification would be that standing would be limited to two of eight hours. In addition, walking would be two of eight hours. Would that affect your answers?" (Id.) The vocational expert testified that the additional restrictions would not affect his answers as to the positions of cashier II or bench assembler. However, he stated that the position of "cafeteria worker would definitely be walking most of the time, so that one would not meet your hypothetical." (Tr. at 65.)

In accordance with SSR 00-4p, the ALJ then asked the vocational expert, "with respect to hypothetical number two," how the vocational expert knew that the jobs of cashier II and bench assembler could be performed by an individual who could stand and walk for only two hours each in an eight-hour day. In answer, the vocational expert named two bases for his testimony, stating that the "DOT will often cover that issue," and that he also relied on his "professional experience and exposure." (Tr. at 65.) Based on this exchange, the ALJ then included the following findings and explanation in his decision:

> Pursuant to SSR 00-4p, I have determined that the vocational expert's testimony is consistent with the information contained in the Dictionary of Occupational Titles. The vocational expert confirmed that his testimony is consistent with the information in the DOT. In addition, the vocational expert explained that he relied upon the information in the DOT and his professional experience when contemplating the aforementioned jobs in light of the limitations on standing and walking in the residual functional capacity.

(Tr. at 35.)

Contrary to Plaintiff's assertion, the fact that the DOT does not specifically include standing and walking requirements for the positions of cashier II and bench assembler does not render the vocational expert's testimony on this issue baseless. As noted above, SSR 00-

4p recognizes a vocational expert's "experience in job placement or career counseling" as an independent, reasonable basis for relying on the evidence from such an expert rather than the DOT. SSR 00-4p, 2000 WL 1898704, at *2. In fact, a vocational expert's knowledge provides the main, if not the only, reliable source of information regarding certain job aspects, such as the availability of a sit/stand option, which are not covered by the DOT. See Fisher v. Barnhart, 181 F. App'x 359, 365-66 (4th Cir. 2006); Horne v. Colvin, No. 1:13cv00049, 2014 WL 6471751, at *14 (W.D. Va. Nov. 18, 2014) (unpublished); Pierpaoli v. Astrue, No. 4:10–2401–CMC–TER, 2012 WL 265023, at *4 (D.S.C. Jan. 30, 2012) (unpublished). Accordingly, "[c]ourts have held that professional experience or knowledge is a reasonable explanation" where, as here, the DOT is silent as to a hypothetical work restriction. Pierpaoli, 2012 WL 265023, at *4 n. 6 (collecting cases).

Moreover, "[n]othing in SSR 00-4p places an affirmative duty on the ALJ to conduct an independent investigation into the testimony of witnesses to determine if they are correct," as Plaintiff now contends. Martin v. Comm'r of Soc. Sec., 170 F. App'x 369, 374 (6th Cir. 2006); see also Smith v. Colvin, No. 3:13–CV–17, 2013 WL 5966427, at *4 (N.D.W. Va. Nov. 8, 2013) (unpublished) (noting the acceptance of the reasoning in Martin by courts within the Fourth Circuit). In fact, Plaintiff never suggests that the vocational expert's testimony as to the walking and standing requirements of the two identified jobs was necessarily *incorrect*, nor does the record support such a finding. See also O'Bannon v. Colvin, No. 1:13-CV-207-DBH, 2014 WL 1767128 at *9 (D. Me. Apr. 29, 2014); Bratton v. Astrue, No. 2:06-0075, 2010 WL 2901856 at *3 (M.D. Tenn. July 19, 2010).

Rather, Plaintiff's argument focuses entirely on the ALJ's alleged failure to "comply with SSR 00-4p's requirement of eliciting a reasonable explanation for the conflict" before relying on the expert's testimony. (Pl.'s Br. at 7.) Because, as explained above, the ALJ fulfilled his duty pursuant to SSR 00–4p by questioning the vocational expert regarding any inconsistencies with the DOT and regarding the basis for the vocational expert's conclusions, and because the ALJ reasonably relied on the vocational expert's testimony and set out the relevant findings in the decision, Plaintiff's claim lacks merit. See Pearson v. Colvin, 58 F. Supp. 3d 577, 582 (E.D. Va. 2014).

As a final matter, Plaintiff asks the Court to give special consideration to the fact that he appeared *pro se* at the hearing before the ALJ. Good cause has been found to remand "where the [ALJ] fails diligently to explore all relevant facts especially in cases of uneducated, *pro se* claimants and where the absence of counsel appears to prejudice a claimant." Walker v. Harris, 642 F.2d 712, 714 (4th Cir. 1981). Here, however, nothing in the hearing transcript indicates that Plaintiff was treated unfairly, was at an unfair disadvantage when compared with counseled claimants, or appeared to be prejudiced in any way. Accordingly, the Court concludes that substantial evidence supported the ALJ's determination at step five of the sequential analysis.

IT IS THEREFORE RECOMMENDED that the Commissioner's decision finding no disability be AFFIRMED, that Plaintiff's Motion to Reverse the Decision of the Commissioner [Doc. #9] be DENIED, that Defendant's Motion for Judgment on the Pleadings [Doc. #11] be GRANTED, and that this action be DISMISSED with prejudice.

This, the 24th day of July, 2015.

    /s/ Joi Elizabeth Peake
United States Magistrate Judge